*MACK, STADLER & CO. v. GREAT WESTERN DESPATCH.

1. PROBABILITY THAT BILL CONTAINS ALL EVIDENCE DOES NOT SUPPLY WANT OF SPECIFIC STATEMENT.

The fact that a bill of exceptions is made from a stenographic report of the trial, and that it is highly probable that it contains all the evidence, does not do away with the necessity for a specific statement that the bill contains all the evidence.

2. GRANTING OF A NONSUIT REVIEWABLE WITHOUT ALL THE EVIDENCE.

When it appears from the bill of exceptions that on the trial of a case in the court of common pleas, in which the burden of proof was on the plaintiffs, they had offered evidence to prove each fact which they were bound to prove to entitle them to re-

---

* This case was dismissed by the supreme court for want of preparation, June 10, 1890. It is followed in Middleton v. Westerney, 4 Ohio, Circ., Dec. 000 (s. c. 7 C. C. R., 398).

cover; and that at the close thereof, the court, on the motion of the defendant, **had** withdrawn the evidence so offered from the jury, and had entered judgment of non-suit for the defendant, to which the plaintiffs excepted, and prosecuted a proceeding in error to reverse the same, the fact that the bill of exceptions taken does not expressly certify, or by necessary implication show that it contains all of the evidence received in the trial court, will not preclude this court from reviewing and reversing the judgment for such error.

**3. Contract Limiting Liability of Carrier.**

When goods are delivered to a common carrier for shipment, by an agent of the shipper, and a "dray ticket" is then delivered by the carrier to such agent, such ticket being a receipt for the goods to be shipped to the owner, and stating they were received subject to the bills of lading of the defendant company, and that the ticket was to be exchanged for the usual bill of lading of the company, "notice of which is hereby admitted, and this property is received subject to all the provisions limiting liability therein contained," and having at the bottom thereof, after the signature of the agent of the defendant thereto, these words: "Exchange this for bill of lading 836 Chestnut St.," and the same is not signed by the agent of the shipper, and nothing further takes place between them, and there is no proof that the agent of the shipper, or the shipper himself, had any knowledge of the contents of said dray ticket until after the loss of the goods, the terms of the usual bill of lading of the defendant company, therein referred to, do not necessarily become a part of the contract of shipment. And on such state of fact being shown in an action brought on the common law liability of the carrier, the trial court was not authorized to find, as a matter of law, that it did, and for this cause render a judgment for the defendant.

**4. Same—Receipt of Paper without Objection not Assent to Limitations.**

A common carrier, to whom goods had been delivered for shipment, cannot limit his common law liability as such, by notice, or by the issue of a receipt containing limitations thereon (not signed by the shipper) when the same are not assented to by the latter: and such assent must be shown by the carrier; and the mere receipt of such paper, by the shipper or his agent, without objection, is not necessarily sufficient evidence of such assent.

Error to the Court of Common Pleas of Hamilton county.

Smith, C. J.

The errors assigned in this case are, that the court of common pleas erred in granting the motion made by the defendant at the conclusion of the evidence offered by the plaintiffs, to withdraw it from the jury, and to dismiss the action, and also in refusing to grant them a new trial.

We are met at the outset by an objection, made by the counsel for the defendant in error, that the bill of exceptions is not in such shape, that we can properly consider either of these questions.

It is settled beyond controversy in this state, that a judgment should not be reversed on the ground that the trial court erred in overruling a motion for a new trial, based on the proposition that the verdict or judgment complained of, was against the evidence in the case, unless the bill of exceptions taken, either expressly certifies, or by necessary implication shows, that it contains all of the evidence given upon the trial.

It must be conceded that the bill in this case, does not, in express terms, state that it contains all of the evidence. It is claimed, however, by the counsel for the plaintiffs in error, First, that such fact is shown by necessary implication, and Second, that the rule in question does not apply to a case where a non-suit has been granted by the trial court.

A reference to the bill shows the following state of fact: It recites, that on the trial of the action, the plaintiffs to maintain the issue on their part, "offered in evidence the following agreement signed by the respective counsel, as to the evidence that shall be given to establish, or not to establish, the fact the defendant is a common carrier." Said agreement is then copied into the bill. It next says: "And the plaintiffs further to maintain the issue on their part, called as a witness,

Henry Mack, who being duly sworn, testified as follows." Then follow questions put to the witness, and answers thereto given by him—interruptions and objections by counsel, and the statements and rulings of the court thereon, with the exceptions taken thereto, in the ordinary manner of stenographic reports of trials.

It then states: "And the plaintiffs further to maintain the issue on their part, read in evidence the deposition of Percy Louderdale, attached hereto marked Exhibit "A," subject to the following objections and rulings thereon." And then appears a statement of the objections made by counsel for defendants, to several of the questions and answers, with the ruling of the court thereon, and the exceptions taken thereto. But it distinctly appears from the bill, just what questions and answers were read to the jury. The depositions of other witnesses were then introduced with a heading like this: "Also the deposition of Louis A. Scott, hereto attached, marked Exhibit "B." Then follows an admission as to what another witness would testify to as to the amount of the sale of certain damaged goods. "And thereupon the plaintiffs rested."

Must it necessarily be implied from the language of this bill of exceptions thus set out, that it contained all of the evidence received in the trial court? It does not say so. It does not contain the common formula, "that the foregoing was all the evidence received in the case." And in view of the strictness required in this respect by the decisions of the supreme court, we are not able to say that such is the necessary implication. It does not expressly appear that every thing which Mr. Mack testified to, is set out in the bill, nor does it affirmatively appear that no other witness was examined. It is true, that knowing the manner in which stenographers usually record everything that takes place at a trial, we may feel that it is highly probable that we have before us, all of the evidence on which the trial court acted —but this is a fact which must be shown by the bill itself, and the opinion which we may have, founded on the usual correctness of stenographers, is not to outweigh the legal presumption that the trial court acted correctly, and therefore in the absence of proof on the face of the bill itself that such was not the fact, that there was other evidence than that which is set forth in it. The case of Garnott v. Ratliff, 83 Ky., 384, to which we have been referred by counsel for plaintiffs, which seems to hold a different doctrine, is evidently predicated upon a statute of that state which requires the court itself, in certain cases, to send up a bill of exceptions containing all the evidence, and the court in that case simply decides, that if the bill itself does not show the contrary, the presumption would be that the trial court did its full duty, and certified up all the evidence. In this state, as we have said, the presumption is different.

We are of the opinion then, that on this bill of exceptions we could not consider the question whether the judgment of the court was against the weight of the evidence; but the important question here is, does the same rule apply when the question is, whether the court erred in granting a non-suit.

We have had difficulty in arriving at a conclusion on this point, entirely satisfactory to our own minds; but our best judgment is, that it is not. In all the Ohio cases where the rule is announced, (unless that in the case of Wagers v. Dickey et al., 17 O., 439, be an exception) it is applied to the other ground already considered; and the reason for the rule in such case is manifest, for the reviewing court can properly decide whether the verdict or judgment was against the weight of evidence, only, when it has, or appears to have before it, the identical evidence presented to the trial court.

On the question whether such trial court erred in granting a non-suit, it is different. It is the settled doctrine of this state "that a motion to arrest the testimony from the jury and render a judgment against the party on whom the burden of proof rests, involves an admission of all the facts which the evidence tends to prove, and presents only a question of law for the court; but if there is evidence

tending to prove each material fact put in issue, and indispensable to a recovery, it should be submitted to the jury under appropriate instructions. Dick v. Railroad Co., 38 O. S., 389.

It would seem then, that if in a given case, the bill of exceptions shows that the plaintiff had offered evidence tending to prove each fact he was bound to prove, to entitle him to recover, that it is not indispensably necessary that it should show that it contained all of the evidence. What reason can there be for it, in view of the holdings of the supreme court, that if there should be any evidence tending to prove each fact required to be shown, that on a motion of that character, the facts themselves are considered as admitted? Section 5299, Rev. Stat., relating to exceptions, provides that the exception must be stated with the facts, or so much of the evidence as is necessary to explain it, and no more, and the whole as briefly as possible."

Is this not sufficiently and properly done in a case of this kind, if the bill of exceptions contains evidence which clearly tends to establish each fact necessary to be proved by the plaintiffs? The only point of difficulty is this: Is the reviewing court, in the absence of a statement in the bill that it contains all of the evidence, bound to presume (as it is in like case where the question is as to the weight of the evidence), that other testimony was in fact offered which justified the trial court in overruling the motion for a new trial? But in view of the principle before referred to, that when evidence is offered, tending to prove all the facts necessary to be proved, on a motion to withdraw it from the jury, the facts themselves must be deemed to be admitted, no such presumption can arise—for the reviewing court in passing upon the question whether the trial court erred in granting such a motion, is also bound to consider such facts as conclusively proved.

The case of Wagers v. Dickey et al., before referred to, does not, we think, lay down a different rule. It was held in that case that the court would not reverse the judgment of the court of common pleas for error in refusing to grant a non-suit, unless the bill of exceptions discloses all the testimony which was before the court on the motion for non-suit." In that case (the converse of this) as the judge says, the presumption that the court below acted right might be properly invoked, and in the absence of a statement in the bill of exceptions that it contained all of the evidence upon which the court acted, it might be presumed that there was other evidence offered which justified the ruling. But for the reasons we have stated, no such presumption, in our opinion, arises in a case where the question is, was a non-suit properly granted, and the evidence in the bill of exceptions tends to prove the whole of plaintiff's case. For these reasons, we think, we may, and are bound to consider the question whether, on the facts set out in the bill, the action of the trial court was right. And this involves a consideration of the issues made and the evidence offered.

The petition of the plaintiffs contained two causes of action. In the first, the plaintiffs allege that the defendant was a common carrier of goods for hire between the cities of New York and Philadelphia and Cincinnati, and that on the 29th of August, 1885, in consideration of a reasonable reward to be paid therefor, it agreed with the plaintiffs' agent in New York, to carry and deliver to plaintiffs in Cincinnati, certain goods specifically described, then delivered to the defendant for that purpose. That defendant failed to do so, and the goods were lost, to their damage $171.53. A second cause of action on a shipment made from Philadelphia, contained substantially similar allegations.

The answer contained four defenses. The first denied all damage to the plaintiffs as alleged by them. The other three, in effect, denied the contract of shipment sued on, by setting up another contract with wholly different stipulations and containing conditions which it alleged, under the facts in the case, exempted them from any liability for the loss. One of the defenses admitted that the goods were burned while in the custody of the C., H. & D. Railroad Co.,

the railroad of that company being one of the roads over which the goods were carried.

The plaintiffs, on the trial, offered evidence tending to show that the defendant was a common carrier, as alleged in the petition—that at the time named, the plaintiffs had purchased the goods in question in Philadelphia and New York, and had directed the sellers to ship them to the plaintiffs in Cincinnati by the defendant company. And so far as the Philadelphia goods were concerned (the facts as to the New York shipment being substantially similar), it tended to show their value, and that under the direction of the shipping clerk of Brown Bros. & Co. (the sellers), they were taken to the depot of the defendant in that city, and marked with the names and address of plaintiffs, and delivered for shipment to an agent of the defendant, who thereupon issued and delivered to the drayman or shipping clerk, what are called in the evidence, "dray tickets," and which are attached to the bill of exceptions, and that the same were by him returned to Brown Bros. & Co., and filed away. There is nothing disclosed in the evidence to show that when the goods were so delivered to the agent, anything was said by him, or by the person so delivering them, or that the latter, or Brown Bros. & Co., read, or knew the contents of the dray tickets, until after the loss of the goods. The evidence also tended to show that after the loss of the goods by fire at the C., H. & D. depot, in Cincinnati, the plaintiffs, at the instance of the agent in Cincinnati of the defendant company, applied to Brown Bros. & Co., in Philadelphia, to procure from the defendant there, a bill of lading for the goods, that they might prepare their claim for the loss, which was done, and the bill of lading attached to the bill of exceptions was issued in lieu of the dray tickets. This bill of lading is a long document, containing a great many stipulations and limitations on the liability of the defendant for the goods, none of which are set out in the dray tickets. There was also evidence tending to prove the amount of the loss of the plaintiffs.

If, when the goods were received for shipment by defendant company, it only assumed the obligations of a carrier at common law, it would seem quite clear that the evidence offered by plaintiffs tended to prove enough to entitle them to recover. That is, if the dray tickets which were issued, did not constitute a special contract between the parties, changing the liability of the defendant from what it would be at common law, enough was shown to put the company on its defense, and to require the case to go to the jury. The question then is narrowed down to this point: Did that which occurred at the time of the delivery of the goods to the defendant for shipment, and the delivery of the dray tickets to the shipping clerk, and the return of them by him to Brown Sons & Co., and their filing them away, nothing more being shown, make such a case that a court, as a matter of law, must hold, that the terms set out in "the usual bill of lading of the company," became the terms of the contract between these parties. If this be the law, the trial court, in our opinion, was right, for this would show by plaintiffs' own evidence, a contract wholly different from that implied by law, and which was the one sued on, and would defeat the right of the plaintiffs to recover in this action. The dray tickets were in this form:

PHILADELPHIA, 8-28, 1885.

Received in apparent good order, by the GREAT WESTERN DESPATCH, from M. BROWN & SONS & Co., the following packages, subject to the conditions contained in the Bills of Lading of the Great Western Despatch.

This is to be exchanged for the usual bill of lading of the Company, notice of the terms of which is hereby admitted; and this property is received subject to all the provisions limiting liability therein contained. Liquors shipped at an agreed valuation of $1.00 per gallon. Owner's risk of leakage. Full name of consignee must be stated in this receipt.

| Marked. | | Two case dry goods. | |
|---|---|---|---|
| Mack, Stadler & Co., | | 3075　3262 | |
| Cincinnati, Ohio. | Original | (Signed.) | HANDLEY. |
| Charges R. | | | Exchange this for bill of lad- |
| Great Western Despatch. | | | ing 836 Chestnut St. |

The question thus presented is an interesting one, and not free from difficulty, and as to which, as we understand, there is much conflict of authority. Without citing many cases, we state what, in our opinion, the weight of authority is, or at least what we suppose would be the holding of the Ohio courts on the precise point, in view of the great disfavor with which the supreme court of the state has viewed the attempt of carriers to limit or change their common law liability, by notices, or even by the insertion of terms and conditions in the receipts or bills of lading issued to shippers, to which they have not, in fact, assented.

It is true that in the case of Railroad Co. v. Pontius, 19 O. S., 221, it has been held that "a bill of lading signed by the company's receiving agent, and accepted and acquiesced in by the consignor, is binding upon the latter, although not signed by him." And this must be accepted as the law of the state. But in this case, two questions arise: First—Whether the doctrine applies to dray tickets, or receipts like those issued by this defendant, the same as it does to a bill of lading, where all the terms and conditions are expressly set forth in it, so they can at once be seen and known,—while in the other, a simple reference is had to a bill of lading of the company not actually present or attached to the receipt, but the terms of which are sought by reference to be incorporated into the receipt. And second—What does an acquiescence in such a contract mean, and how is it to be shown?

As to the first of these questions, we incline strongly to the opinion, that the stipulations of the receipts, are more in the nature of a notice than of a contract between the parties. The supreme court of the United States in the case of Mich. Cent. R. R. Co. v. M'f'g. Co., 16 Wall., 318, clearly and strongly states the law on the subject of the attempt of carriers to limit their common law liability by a notice. In that case the railroad company had received goods to be shipped, and had given a receipt therefor to the consignors, containing the statement that they were to be transported to Detroit, and there delivered to the consignee on payment of charges, "and subject to the rules and regulations established by the company, notice of which is given on the back hereof"; and the condition on the back of the receipt was one, which if a part of the contract in that case, would have exempted the company from liability for the loss. But the court held that it was of no force whatever. Judge Davis, in delivering the opinion of the court, said: "It is not only against the policy of the law, but a serious injury to commerce, to allow the carrier to say that a shipper of merchandise assents to the terms proposed in a notice, whether it be given to the public, or special to a particular person, merely because he does not expressly dissent from them."

It is difficult for us to see what better position this company stood in, than did the one in that case. In substance and effect, the cases were the same. It is true that in the case at bar the attempt is made on the face of the receipt to incorporate into it the terms of a paper referred to. In the other, the terms referred to were on the back of the receipt, and there would seem to be less reason for holding it invalid, than in this case, for it was so placed that the exercise of the diligence ordinarily required of a person receiving such a paper, would enable him to see the terms. It was not so in this case, and substantially was an attempt on the part of the carrier to limit its liability by a notice. And it seems to us, that it would be as much against public policy to allow a carrier to limit his liability, in this mode, without the express assent of the shipper as in the other.

On the other point mentioned, we think that it is settled by the decisions of the supreme court of the state, notably in that of Gaines v. Union Trans. Co., 28 O. S., 418, "that where a carrier claims exemption from such (common law) liability under a bill of lading, not signed by the owner or consignee of the goods, he must aver and prove that such a bill was assented to by the shipper." And, "whether such assent has been given, so as to make a bill of lading binding upon

the shipper, is a fact to be proved, and can not be implied or presumed contrary to the facts, when the acts of the shipper do not operate as an estoppel."

And Judge Johnson, in deciding the case, uses this language: "The clear weight of authority is, that sound principles of public policy demand that the common carrier should be held strictly to his common law liability, unless it is limited by express agreement, and that the principles of law, which create obligations *ex contractu*, by an implied promise oi constructive assent have no application to contracts limiting the liability of a common carrier." Again, "the language of the Ohio decisions is, that the carrier may limit his liability by special agreement. This excludes the idea that there may be an implied agreement where there is none expressed. An implied special agreement would be an anomaly in the law."

There is other language in the decision, equally forcible. And as in this case, there was not, as we perceive, the slightest evidence of a special agreement, other than the mere reception of the dray ticket, without any proof of knowledge of its contents on those receiving it, it might well have been relied on as a simple receipt. We are of the opinion, that if the effect of the reference to the bill of lading in the dray ticket given, was to make it a part of the receipt, that the court was not as a matter of law authorized to hold that there was an express assent to its terms. The very most that could be claimed, was, that it was a question of fact for the jury. And we think that there was error in the action of the court, in withdrawing the evidence from the jury and rendering a judgment for the defendant, and it will be reversed with costs.

Simrall & Mack, for plaintiffs in error.
Ramsey. & Maxwell, for defendant in error.